IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| JANAE D. MONTGOMERY, | ) | Civil Action No.: 12 C 9328 |
| | ) | |
| Debtor. | ) | Suzanne B. Conlon, Judge |
| | ) | |
| _____ | ) | |
| | ) | |
| DANIEL GOODMAN, LLC and COLLEEN | ) | |
| HILL, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JANAE D. MONTGOMERY, | ) | |
| | ) | |
| Appellee. | ) | |

## MEMORANDUM OPINION AND ORDER

On October 2, 2012, the United States Bankruptcy Court for the Northern District of

Illinois ("the bankruptcy court") entered three orders awarding sanctions to Janae Montgomery

against the law firm Daniel Goodman, LLC ("Goodman") and Colleen Hill for violating her

discharge in bankruptcy. Goodman and Hill appeal. For the reasons below, the court affirms.

## BACKGROUND

Janae Montgomery voluntarily filed for chapter 7 bankruptcy protection on April 15,

2011. Bankr. Dkt. No. 1.[1] Daniel Goodman appears on her schedule of unsecured creditors.

Dkt. No. 1-3 at 102. At the time, the law firm of Daniel Goodman, LLC represented Colleen Hill

---

[1] Citations to the record in Montgomery's chapter 7 bankruptcy case, *In re Montgomery*,
11-bk-16081 (Bankr. N.D. Ill.), are denoted as "Bankr. Dkt. No. __." Citations to the record in
the district court appear as "Dkt. No. __." The court takes judicial notice of the record in the
bankruptcy proceeding. *Green v. Warden, U.S. Penitentiary*, 699 F.2d 364, 369 (7th Cir. 1983).

in a lawsuit against Montgomery pending in the Circuit Court of Cook County ("the tort lawsuit"). Hill sought damages for injuries she sustained when Montgomery struck her in the jaw. Appellants do not dispute Montgomery listed the correct street address, suite number, state, and zip code for Goodman; they claim the name of the city was incorrect. *Id.* at 91. On April 20, 2011, the clerk of the bankruptcy court sent notice of Montgomery's bankruptcy to the individuals on her schedules, including Goodman at the address provided. *Id.* at 116. The creditors meeting was held on June 28, 2011, and the deadline to object to Mongtomery's discharge or to challenge the dischargeability of debts was August 29, 2011. *Id.* at 114. Hill did not object or seek a determination whether her tort claims against Montgomery were dischargeable by the August 29, 2011 deadline. On August 30, 2011, the bankruptcy court granted Montgomery a discharge in bankruptcy under § 727 of title 11 of the United States Code ("the Bankruptcy Code").[2] Bankr. Dkt. No. 15.

On July 12, 2011, prior to entry of the discharge, Ned Khan, an attorney representing Montgomery in the tort lawsuit, mailed a letter to Hill's lawyer regarding an upcoming status hearing and stated Montgomery had filed for bankruptcy. Dkt. No. 1-5 at 67. On July 18, 2011, at Goodman's request, the state court placed the tort lawsuit on the bankruptcy stay calendar. Dkt. Nos. 1-3 at 82, 1-5 at 66. On October 18, 2011, over a month after the discharge, appellants moved the state court to remove the tort lawsuit from the bankruptcy stay calendar, asserting "[Hill's] claim for personal injury was not a dischargeable debt in [Montgomery's] bankruptcy filing." Dkt. No. 1-5 at 68. The motion was granted. Dkt. No. 1-3 at 82.

On November 18, 2011, Montgomery moved to dismiss the tort lawsuit pursuant to 735

---

[2] All section references are to the Bankruptcy Code unless otherwise noted.

2

ILCS 5/2-619 on grounds that Hill's claims against Montgomery had been discharged. On

March 12, 2012, the state court granted Montgomery's motion to dismiss on the merits. The

court found there was "no dispute that [the tort lawsuit] involves malicious and willful injury and

would fall under Section 523(a)(6)" but held that § 523(a)(3)(B)'s discharge exception did not

apply because Hill had actual knowledge of the bankruptcy case with sufficient time to object to

the discharge or seek a dischargeability determination by the August 29, 2011 deadline. Dkt. No.

1-5 at 80-81. On April 4, 2012, Goodman, on behalf of Hill, moved for reconsideration. The

motion was denied on May 7, 2012. *Id.* at 96-97. On June 15, 2012, appellants filed a second

motion to reconsider. The state court denied the motion, stating "it is highly irregular, and

generally disfavored under the law, to seek reconsideration of a denial of a motion to reconsider"

and noting Hill's second motion to reconsider was "essentially, the same motion to reconsider as

previously argued." *Id.* at 147; Dkt. No. 1-6 at 1.

On June 15, 2012, prior to the state court's ruling on the second motion to reconsider,

Montgomery moved in the bankruptcy court for sanctions against Goodman and Hill based on

their alleged violation of § 524(a)'s discharge injunction. She claimed Goodman and Hill

engaged in conduct to collect a discharged debt by, among other things, requesting the removal

of the tort lawsuit from the state court's bankruptcy stay calendar; compelling her to move to

dismiss the tort lawsuit based on the bankruptcy discharge; and filing multiple motions for

reconsideration of the state court's ruling on the merits. Dkt. No. 1-3 at 74-75. She requested

actual damages of $8,310.00, representing her attorney's fees for services provided post-

discharge relating to Goodman and Hill's removal of the tort lawsuit from the bankruptcy stay

calendar, her motion to dismiss the tort lawsuit, and Hill's first motion to reconsider. *Id.* at 75,

3

85-86. She also requested damages for emotional distress and punitive damages. *Id.* at 75.

A hearing was held on Montgomery's sanctions motion on August 17, 2012. The bankruptcy court granted the motion and also denied Hill leave to initiate an adversary proceeding to object to the dischargeability of her claims against Montgomery. Dkt. No. 1-7 at 8, 12-13. The court noted that § 524(a)(2)'s discharge injunction "is broad and prohibits any act taken to collect a discharged debt as a personal liability of the debtor" and that violations of the discharge injunction are punishable as contempt. *Id.* at 10-11 (citing *Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 915 (7th Cir. 2001)). The court found that Hill and Goodman's conduct after August 30, 2011 violated the discharge injunction because they had actual knowledge of the bankruptcy case on July 12, 2011. *Id.* at 12. The court determined that sanctions were appropriate because their actions in the tort lawsuit constituted attempts to collect a discharged debt and were willful. *Id.* at 13. The court found an award of $8,310 for attorney's fees in the tort lawsuit to be reasonable under the circumstances but declined to award punitive damages because Montgomery did not show Hill or Goodman acted with malicious intent. *Id.* at 13-14. The court continued the matter for an evidentiary hearing on reasonable attorney's fees for the sanctions motion and actual damages for emotional distress. *Id.* at 14-17, 19.

On August 31, 2012, Montgomery filed a second motion for sanctions seeking an award of $1,770.00, representing attorney's fees incurred defending against Hill's second motion to reconsider in state court. Dkt. No. 1-4 at 6, 8. She filed a third motion for sanctions seeking $5,400.00 for attorney's fees incurred pursuing the sanctions motions in the bankruptcy court. *Id.* at 11-17. On October 1, 2012, the bankruptcy court granted the sanctions motions against Goodman and Hill in three separate orders awarding $4,800.00, $1,770.00, and $8,310.00,

respectively, for a total award of $14,880.00. *Id.* at 19-21.

Goodman and Hill filed a motion to alter or amend the sanctions orders; the motion was denied. Bankr. Dkt. Nos. 46, 47. On November 6, 2012, they timely filed a notice of appeal. Dkt. No. 1-6 at 32. They raise two issues: (1) whether the bankruptcy court erred as a matter of law in holding their actions in state court constituted an "action to collect" under § 524(a)(2); and (2) whether the bankruptcy court abused its discretion and awarded Montgomery excessive sanctions by failing to apply the legal standards for awarding professional fees in bankruptcy cases.

## STANDARD OF REVIEW

This court has jurisdiction over the bankruptcy appeal pursuant to 28 U.S.C. § 158(a)(1). A bankruptcy court's legal conclusions and interpretations of statutes are reviewed *de novo*. *Reedsburg Util. Comm'n v. Grede Foundries, Inc. (In re Grede Foundries, Inc.)*, 651 F.3d 786, 790 (7th Cir. 2011) (applying *de novo* review to bankruptcy court's determination that creditor's actions violated automatic stay). The decision to impose sanctions is reviewed for an abuse of discretion. *In re Rimsat Ltd.*, 212 F.3d 1039, 1046 (7th Cir. 2000). An order awarding sanctions will be affirmed unless it is contrary to law or reaches an unreasonable result. *Id.*

## DISCUSSION

**I.      Whether Appellants' Actions Constitute Attempts to Collect a Discharged Debt**

A discharge order entered pursuant to § 727 of the Bankruptcy Code eliminates a debtor's legal obligation to pay certain pre-petition debts. 11 U.S.C. § 727(b); *In re McFarland*, 84 F.3d 943, 945-46 (7th Cir. 1996). A "debt" is a "liability on a claim." 11 U.S.C. § 101(12). "Claim" is broadly defined as the "right to payment." *Id.* § 101(5)(A). A debt for a willful and malicious

injury under § 523(a)(6) that was not listed or scheduled in time to permit the creditor to timely file a proof of claim or request a dischargeability determination is excepted from discharge. *Id.* § 523(a)(3)(B). However, a debt under § 523(a)(6) that was not properly listed or scheduled will still be discharged if the creditor had notice or actual knowledge of the bankruptcy case in time to file a proof of claim or to request a dischargeability determination. *Id.*

Once entered, the discharge enjoins "the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor . . . ." *Id.* § 524(a)(2). A debtor who believes a creditor is collecting a discharged debt may take any or all of the following actions: (1) assert the bankruptcy discharge as an affirmative defense in the state court action and allow the state court to determine the issue of dischargeability under § 523(a)(3); (2) remove the dischargeability defense or the entire state court action to the bankruptcy court; and (3) move to reopen the bankruptcy case to determine dischargeability or to enforce the discharge injunction under § 524(a)(2). *In re Kewanee Boiler Corp.*, 270 B.R. 912, 918 (Bankr. N.D. Ill. 2002) (Schmetterer, J.); *Stucker v. Cardinal Bldg. Materials, Inc. (In re Stucker)*, 153 B.R. 219, 222 (Bankr. N.D. Ill. 1993) (Squires, J.). A willful violation of the discharge injunction constitutes civil contempt and may warrant sanctions. *Cox*, 239 F.3d at 915.

Appellants do not challenge the bankruptcy court's determination that Hill's tort claims were discharged on August 30, 2011 because Hill had actual knowledge of the bankruptcy case in time to object to the discharge or seek a dischargeability determination by August 29, 2011. Rather, they challenge the bankruptcy court's award of sanctions and reasonable attorney's fees for their post-discharge actions in state court. Appellants argue their conduct did not constitute

an act to collect a discharged debt in violation of § 524(a)(2) because they were properly raising

the issue whether Montgomery's debt to Hill was discharged. They contend their post-discharge

actions were based on a good-faith belief Hill's tort claims had not been discharged due to

Montgomery's failure to schedule Hill as a creditor or provide a correct address for Goodman.

The court disagrees with appellants' description of their post-discharge conduct. The

record does not support their contention they acted for the purpose of seeking a determination

from the state court whether Hill's claims against Montgomery were discharged in bankruptcy.

In moving the state court to remove the tort lawsuit from the bankruptcy stay calendar, appellants

conclusively stated "[Hill's] claim for personal injury was not a dischargeable debt in

[Montgomery's] bankruptcy filing." Dkt. No. 1-4 at 2. They did not ask the state court to rule on

dischargeability; they sought removal of the tort lawsuit from the bankruptcy stay calendar so

they could continue to litigate Hill's claims. The state court determined Hill's claims had been

discharged after Montgomery, not appellants, raised the discharge as an affirmative defense in

her motion to dismiss the tort lawsuit. After the state court dismissed the case on the merits,

appellants moved for reconsideration not once, but twice—conduct the state court described as

"highly irregular and generally disfavored," especially given the second motion to reconsider was

"essentially, the same motion" as the first. Dkt. Nos. 1-5 at 147, 1-6 at 1.

Appellants' briefs suggest they also challenge the imposition of sanctions. A violation of

the discharge injunction must be willful to warrant a finding of civil contempt and sanctions. *In

re Pincombe*, 256 B.R. 774, 782 (Bankr. N.D. Ill. 2000) (Sonderby, J.). "Willful" requires that

the creditor knows about the discharge injunction and intends to commit the acts that violate the

injunction. *Id.* at 783; *In re Andrus*, 184 B.R. 311, 315 (Bankr. N.D. Ill. 1995) (Schmetterer, J.).

Decisions vary as to whether the creditor's subjective intent is relevant to "willfulness."

*Compare, e.g., Taborski v. U.S. I.R.S.*, 141 B.R. 959, 965-67 (N.D. Ill. 1992) (Marovich, J.)

(specific intent not required to find willful violation of automatic stay); *Pincombe*, 256 B.R. at

783 (courts should not focus on the subjective intent of alleged violators in determining whether

a violation of the post-discharge injunction is willful); *Helms v. Bridges (In re Bridges)*, No. 89

B 16271, 1993 WL 98666, at *5 (Bankr. N.D. Ill. Mar. 30, 1993) (Katz, J.) (creditor's mistaken

belief his actions were justified does not preclude court from finding violation of automatic stay),

*with In re Barr*, 457 B.R. 733, 738 (Bankr. N.D. Ill. 2011) (Squires, J.) (denying sanctions

because of condominium association's good-faith belief that debt was subject to a discharge

exception); *OakFabco, Inc. v. Am. Standard, Inc. (In re Kewanee Boiler Corp.)*, 297 B.R. 720,

736-37 (Bankr. N.D. Ill. 2003) (Schmetterer, J.) (denying contempt sanctions based on creditor's

good-faith, colorable basis for asserting there had been no discharge).

The broader definition of "willful" is satisfied here. It is undisputed appellants knew

about the discharge order, which they referenced in their motion to remove the tort lawsuit from

the bankruptcy stay calendar. Dkt. No. 1-4 at 2. Nor do they dispute that they intended to engage

in the actions that the bankruptcy court subsequently found to violate the discharge injunction. It

is not necessary for this court to resolve whether good faith precludes a finding of willfulness

because the record does not support appellants' claim they acted in good faith. The Bankruptcy

Code describes the procedures that should be taken to resolve controversies concerning

dischargeability, and the creditor bears the burden of proving the debt meets the statutory

exception requirements. *McFarland*, 84 F.3d at 946. Hill conceded she knew about

Montgomery's bankruptcy case prior to the deadline for filing an objection to the discharge or

seeking a dischargeability determination, Dkt. No. 1-3 at 91, yet she failed to initiate an

adversary proceeding before that deadline expired. She did not attempt to reopen the bankruptcy

case after entry of the discharge to assert her claims were excepted from discharge. Further,

§ 323(a)(3)(B) clearly did not apply to Hill's claims because she had actual knowledge of the

bankruptcy case. Her request to remove the tort lawsuit from the state court's bankruptcy stay

calendar provides no explanation or support for her assertion the personal injury claim was not

discharged, and repeatedly challenged the state court's dismissal of the tort lawsuit after the case

was dismissed on the merits. On these facts, there is no basis for a claim of good faith.

   *In re Johnson*, No. 10-14292, 2011 WL 1983339 (E.D. Mich. May 23, 2011) (Cook, Jr.,

J.), upon which appellants rely, is distinguishable. There, the court determined that counsel's

efforts to determine whether a court had ruled whether his client had an enforceable security

interest in post-petition disability benefit payments was not an action to collect a debt in violation

of § 524(a). *Id.* at *10. The creditor in *Johnson* had filed a motion with the bankruptcy court to

resolve this issue, but the motion was never ruled on. *Id.* at *9. Years later, the creditor's new

counsel sent letters to the debtor's employer for clarification on the issue. *Id.* The letters

referenced the sources of his uncertainty, the state of his uncertainty, and the fact-finding nature

of his correspondence. *Id.* at *10. On these facts, the court concluded it was "implausible" to

claim the letters represented an attempt to collect on a discharged debt. *Id.*

   Nor does *Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81 (3d Cir.

1988), dictate a different result. In *Brown*, the Third Circuit reversed the district court's

determination that a credit union's letter refusing to provide future services to the debtor unless

she reaffirmed her debt was an attempt to collect a pre-petition debt in violation of § 362's

automatic stay, which protects a debtor from collection actions until the discharge is granted. *Id.*

at 83. *Brown* held the credit union's letter stating its policy was legally valid and did not offend

the bankruptcy laws. *Id.* at 85-86.

Unlike the creditors in *Johnson*, appellants did not engage in informal fact-finding or

mere inquiry, nor did they engage in legally valid communications to define a future business

relationship like the creditor in *Brown*. There is no evidence Hill or Goodman raised or

attempted to resolve questions about the dischargeability of Hill's tort claims before representing

them as non-dischargeable to the state court. Thus, the bankruptcy court did not err as a matter

of law in concluding that Hill and Goodman's post-discharge pursuit of Hill's tort claims in state

court constituted an action to collect a discharged debt in violation of § 524(a)(2), and it did not

abuse its discretion in awarding sanctions.

## II.     Whether the Amount of Sanctions Constitutes an Abuse of Discretion

The bankruptcy court may exercise its power under § 105(a) to hold the creditor in civil

contempt and award sanctions for willful violations of the discharge injunction. 11 U.S.C.

§ 105(a); *Cox*, 239 F.3d at 915. Standard remedies include restitution of the costs of defending

or responding to the creditor's actions, reasonable attorney's fees, and compliance with the

discharge injunction. *Cox*, 239 F.3d at 916; *In re Sekendur*, 334 B.R. 609, 622 (Bankr. N.D. Ill.

2005) (Schmetterer, J.). Punitive damages are not warranted unless the debtor can prove criminal

contempt. *Cox*, 239 F.3d at 916. An order awarding sanctions will be affirmed unless it is

contrary to law or reaches an unreasonable result. *Rimstat*, 212 at 1046.

The bankruptcy court entered orders awarding Montgomery $14,880.00. The award

includes $10,080.00 for the cost of defending against appellants' prosecution of the tort lawsuit

in state court and $4,800.00 for attorney's fees incurred enforcing the discharge injunction in the

bankruptcy court. Hill and Goodman claim that the award is excessive and the bankruptcy court

abused its discretion because it did not apply the standards applicable to professional fee awards

when determining the amount of sanctions. Specifically, they contend the bankruptcy court

failed to deduct "clerk time" and "local travel time" from the attorney's fees and to correct for

allegedly overstated in-court time reported by Montgomery's attorneys.

Appellants have not established the bankruptcy court's sanctions award is contrary to law.

The case law they cite to argue the court improperly compensated for "clerk time" and "local

travel expenses" involve petitions for compensation by the trustee's or debtor's counsel, which

require court approval under § 330. In those cases, payment is sought from the debtor's estate

and affects the pool of assets available for distribution to the creditors. In contrast, the sanctions

motions request reimbursement for attorney's fees payable by the debtor, not the estate.

Appellants present no authority showing that the standards that courts use to evaluate fee

petitions under § 330 apply when determining the amount of sanctions to award for violations of

discharge injunctions.

Nor have appellants established the sanctions award is unreasonable. They object to the

time billed and rates charged by Montgomery's attorneys, but the billing invoices she attached in

support of her motions confirm that these were the fees she was charged by counsel for defending

against appellants' continued prosecution of the tort lawsuit in state court and to enforce the

discharge injunction in the bankruptcy court. This work was appropriate and necessary to protect

her interests. The time spent filing documents in state court is not excessive given it includes

time spent traveling round-trip between counsel's office in Aurora, Illinois, and downtown

Chicago. Similarly, the fees for the attorney who litigated the sanctions motions in bankruptcy court includes time spent traveling from counsel's offices in Aurora and the DuPage courthouse in Wheaton, Illinois. The rates are not overstated in light of the fee agreement showing Montgomery agreed to pay her attorneys $400 per hour for in-court time and $300 per hour for out-of-court time, including travel. Given the facts of the case, the evidence in the record, and the bankruptcy court's broad discretion to fashion an appropriate remedy, the court does not find sanctions of $14,880.00 to be excessive or punitive.

## CONCLUSION

The bankruptcy court did err as a matter of law in concluding Hill and Goodman's actions following the entry of Montgomery's discharge in bankruptcy constituted an action to collect a debt within the meaning of 11 U.S.C. § 524(a)(2). Nor did the bankruptcy court abuse its discretion under 11 U.S.C. § 105(a) in awarding sanctions in the amount of $14,880.00.

ENTER:

Suzanne B. Conlon
United States District Judge

May 7, 2013

12